ORIGINAL

**FILED**

MAR 1 6 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   v.<br><br>HOWARD KAPLAN (1),<br>STEPHEN KAPLAN (2), and<br>ERIC KAPLAN (3),<br><br>           Defendants. | Case No. 15 CR 651-CAB<br><br>I N F O R M A T I O N<br><br>Title 18, U.S.C., Section 371 – Conspiracy to Commit Wire Fraud |

The United States Attorney charges:

### INTRODUCTORY ALLEGATIONS

At all times relevant herein:

1. Beginning in or about 2001, and continuing to sometime in 2010, Equity Based Services ("EBS") and its affiliates offered investment opportunities involving primarily the purchase and operation of self-storage facilities. In particular, EBS would enter into purchase agreements to buy self-storage facilities, and then seek investors through property syndication and/or 1031 exchanges. At all times relevant, co-defendants Howard Kaplan, Stephen Kaplan and Eric Kaplan were involved in the operation of EBS.

2. Some investors in projects that EBS syndicated ("EBS investors") known as cash investors became limited partners in a single purpose entity ("SPE") Limited Liability Partnership (LLP) or

Limited Liability Company ("LLC").  Other EBS investors became owners of an undivided portion of the property as a tenant in common ("TIC").

3.   Between about 2001 and 2010, EBS syndicated approximately 77 self-storage projects.   During this time period, more than 10 individuals invested in EBS syndicated self-storage projects. Stephen Kaplan and others, either as individuals, or through SPEs, initially served as General Partner/Manager, Asset Manager, or Property Manager on all 77 projects.

4.   Investors in the various EBS syndicated self-storage projects were induced in part to invest by a representation that investors would be entitled to a "Preferred Return", usually in the amount of 8% per annum, that would generally be paid on a monthly, quarterly or other periodic basis, and if not paid would accrue until the property was sold.   Upon sale of a property, the first funds distributed would be paid to investors for any accrued but unpaid Preferred Return; then investors would receive any unreturned invested capital; then the limited partners and TICs would  receive 75% of the profits and the Manager (the SPE) would receive 25%.   Investors were also promised that the Manager would not share in or be paid their 25% share of any operating profits, unless and until all other investors had received their 8% Preferred Return.

5.   From approximately 2002 through August 2010, EBS regularly distributed the periodic payments of the Preferred Return to investors and thereafter collected their Asset Management Fees.   Based in part on these prompt and regular payments, many earlier investors invested in one or more subsequent projects.   These prompt and regular payments of the Preferred Return also helped attract new investors to EBS syndications.

6. Beginning in or about 2006, some of the periodic payments of the 8% Preferred Returns received by investors in several of the projects were able to be made only by Defendant Howard Kaplan's diversion of funds from better-performing properties ("lending projects") to underperforming ones ("borrowing projects"), or by the use of fees paid to EBS that were generated by new project syndications. In addition, Howard Kaplan sometimes used these funds to pay the borrowing projects' debt service and/or operating costs.

7. In this manner, Howard Kaplan failed to disclose to individual investors that their 8% Preferred Return distributions were often made despite the fact that their specific investment project was not generating enough operational profit to support the payment of an 8% Preferred Return or was, in fact, not generating sufficient funds to pay all operational costs and debt service. Howard Kaplan also failed to disclose to investors commingling of funds and his use of investor funds to pay borrowing projects.

8. In addition to commingling of funds, Howard Kaplan breached his fiduciary responsibility to investors by:

a) Pre-funding Preferred Returns through a process of raising excess funds for individual projects;

b) Inducing investors to invest additional funds in projects without informing these investors as to the true financial condition of these properties.

c) Creating new and sometimes undisclosed fees called "capital assignment considerations" and "equity consulting fees", including with respect to the acquisition of the AMS I Atlanta storage project.

9.  Beginning in early 2010, co-defendants Howard Kaplan, Stephen Kaplan and Eric Kaplan conspired to defraud EBS investors by knowingly failing to disclose material information about the source of periodic Preferred Return payments and the actual performance of EBS syndications.

10.  Defendants Stephen Kaplan and Eric Kaplan learned of the improper actions by Howard Kaplan set forth above, no later than January 2010.  Despite this knowledge, co-defendants Stephen Kaplan and Eric Kaplan, along with Howard Kaplan, subsequently presented additional new syndicated projects to investors without disclosing the prior activity of Howard Kaplan as set forth above.

**COUNT ONE**

**(Conspiracy – 18 U.S.C. Section 371)**

11.    The Introductory Allegations contained in paragraphs 1 through 10 of this information are re-alleged and incorporated as if set forth fully herein.

12.    Beginning in early 2010, and continuing up to and including August 2010, in the Southern District of California, and elsewhere, defendants Howard Kaplan, Stephen Kaplan and Eric Kaplan knowingly conspired and agreed to defraud investors by withholding material information from investors regarding both the diversion of funds and the true financial status of the subject properties in order to induce those investors to continue to make further investments in EBS syndications in violation of Title 18, United States Code, Section 1343.

**METHODS AND MEANS OF THE CONSPIRACY**

13. As a method and mean of the conspiracy, defendants Howard Kaplan, Stephen Kaplan and Eric Kaplan would circulate syndication documents to investors, which failed to disclose material facts about the diversion of funds and the true financial condition of the EBS syndications.

**OVERT ACTS**

14. The following overt acts, among others, were committed in the Southern District of California:

a. On or about May 26, 2010, defendants Howard Kaplan, Stephen and Eric Kaplan, and the Kaplan controlled entities, utilized the wires to complete the purchase and syndication of the AMS I Atlanta storage project by sending documents to, and receiving documents from, investors, which documents failed to disclose material facts as described above.

All in violation of Title 18, United States Code, section 371.

DATED: March ~~13~~ 16, 2015

> LAURA E. DUFFY
> United States Attorney

By: _____

> Patricia M. Fusco
> Special Assistant U.S. Attorney